410 So.2d 867 (1982)
Ralph R. ALEXIS
v.
Florence Linder, wife of/and Joseph PACACCIO, Jr.
No. 12484.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
Porteous, Toledano, Hainkel & Johnson, Ralph R. Alexis, III., New Orleans, for plaintiff-appellant.
Manard, Schoenberger & Ryan, Kevin C. Schoenberger, New Orleans, for defendants-appellees.
Before LOBRANO, BARRY and KLEES, JJ.
LOBRANO, Judge.
This suit was filed by Ralph Alexis, Jr., appellant, against Florence and Joseph Pacaccio, Jr., appellees, seeking $10,654.23, the balance allegedly due on an invoice submitted by Alexis for his services in the renovation of the Pacaccio's home in Claiborne Hills Estate. The amount sought by Alexis was determined by adding the following amounts: (1) the cost of materials and supplies not previously invoiced; (2) the fees due for drafting services rendered; and, (3) the "standard" overhead and profit due a contractor.
The Pacaccios maintained that they had never entered into an agreement with Ralph Alexis to hire him as a contractor, but rather employed him only to draw *868 plans. Thus, they maintain, he is not entitled to a 15% overhead on all costs of the job, plus a 10% profit. The trial judge held that there was no agreement between the parties indicating that Alexis was to be a general contractor, but awarded him $570.40 calculated in the following manner.

$1,008.00 representing 126 hrs. at $8.00 per hr.
 for plaintiff's drafting work.
 1,562.40 representing invoices 5 and 6 for materials
 and supplies purchased by
 plaintiff
_________
$2,570.40
-2,000.00 representing the draw taken by plaintiff
 during the job
_________
$ 570.40

In this case, as in the case of all contracts, there must be consent by both parties as to all aspects of the subject of the contract. "Consent results from a free and deliberate exercise of the will of each party where the intent has been mutually communicated or implied, La.C.C. Art. 1819, and accepted by the party to whom a proposal is made. La.C.C. Arts. 1798, 1800." Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979) at p. 1011.
The consent necessary to form a contract may be either expressed or implied. La.C.C. Arts. 1780, 1811. Those cases in which consent is implied are particularly determined by law. La.C.C Art. 1781.
* * * * * *
"Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean or by legal presumption are directed to be considered as evidence of an assent." La.C.C. Art. 1811

"Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract....." La.C.C. Art. 1816

All parties agree that there was no written contract or agreement indicating that appellant was to act as contractor. Instead, Alexis attempted to prove that a contract was in existence because of the "implied" consent of the defendants. He testified that he had acted as contractor for these same defendants some years earlier in the construction of their New Orleans home. He also testified that he was a licensed contractor and that the Pacaccios knew him as such.
On the other hand, Mrs. Pacaccio testified that she never had any intention to hire any contractor for the renovation work and planned to perform that duty herself. Diane Ramey, a witness called by the defendants, testified that she was told by Mrs. Pacaccio that Alexis should not be hired by her (Ramey) as a contractor, but only hire him to draw plans. This conversation took place at a Labor Day barbecue, about the same time Alexis began to work for the defendants.
"In cases where the law does not expressly create a legal presumption of consent from certain facts, it is left to the discretion of the judge to determine if consent is to be implied from particular circumstances of the case." Illinois Central Railroad Co. v. International Harvester, id. at 1012.
Our review of the record convinces us that the trial court did not err when it concluded that there was no meeting of the minds or consent between Alexis and the Pacaccios. That being so, there was no contract between the parties.
In the absence of an agreement between the parties as to price, plaintiff is entitled to be paid for the work done by him under the principles of quantum meruit, the source of which is La.C.C. Art. 1965. Skains v. White, 391 So.2d 1327 (La.App. 2nd Cir. 1980)
"Quantum meruit is an equitable doctrine, based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby. Under these circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even in the absence of a specific contract therefor." Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La.App. 3rd Cir. 1976) at 1195.
*869 The testimony at trial although contradictory indicates to us that during the months of September and October, plaintiff performed many tasks which accrued to the benefit of defendants. Mr. Alexis prepared numerous sketches, particularly of the bathroom and kitchen, helped secure the services of Henry Randle, a carpenter, and purchased numerous materials and supplies for the Pacaccios. He accompanied Mrs. Pacaccio to the showroom of R. J. Marchand to assist in the selection of kitchen cabinets and was present on the job-site during much of the time in question.
Plaintiff's services were terminated on or about November 1, 1978 at which time he submitted his final invoice to defendants which they refused to pay. At trial plaintiff introduced into evidence various receipts and a cash book which show the substantial amount of time and efforts expended by plaintiff on defendants' behalf.
We hold that the trial court erred in not awarding Ralph Alexis additional compensation for the work he performed above and beyond the drafting of plans.
During the course of his employment, Ralph Alexis received $400.00 per week for 5 weeks which he considered a draw on his future profit as contractor and defendants, by their own testimony, considered as salary. Mrs. Pacaccio stated she expected to pay Alexis like an architect.
The trial court subtracted this $2,000.00 from their award of the fee for drawing and the unpaid invoice, thus arriving at the judgment of $570.40.
We hold that this was error and that Ralph Alexis was entitled to be paid the $1,008.00 for his drawings and $1,562.40 for the materials he purchased on behalf of the Pacaccios (invoices 5 and 6, Alexis Exhibit # 2) without deducting the $2,000.00 previously received. He earned that $2,000.00 during the course of the job.
For the foregoing reasons, the judgment of the trial court is amended by increasing the principal award in favor of plaintiff, Ralph Alexis, Jr. and against defendants, Florence and Joseph Pacaccio from $570.40 to $2,570.40. In all other respects the judgment of the trial court is affirmed.
Amended and as Amended Affirmed.