LANDRY, Judge.
Plaintiff (Croatain), who instituted this proceeding to foreclose a mortgage it held on a barge belonging to defendant (So-hyde), appeals a judgment in the sum of $3,911.25 rendered in favor of Contract Welding and Repair Co., Inc. (Contract), as Intervenor herein, for expenses incurred and custodial services performed while the barge was under seizure. Appellant concedes the correctness of the sum of $1,355.-25 awarded Contract for actual expenses *684 incurred, but argues that the sum of $2,556.00 allowed for 142 days of custody at the rate of $18.00 daily is unreasonable. We affirm.
Prior to its seizure by Appellant, the barge in question had been damaged by fire and towed to Contract’s shipyard. Contract agreed to provide a berth for the damaged barge free of charge in the hope that it would eventually be awarded the contract to repair the vessel. On December 7, 1971, the barge was seized pursuant to a writ issued in connection with Croa-tain’s foreclosure of its mortgage by exec-utory process. When seized, the barge was in Contract’s slip. It remained there until sold at sheriff’s sale on April 26, 1972. During this entire time, Contract cared for the barge. The question is purely factual.
The seizure in question was effected by Leland Pete, Deputy Sheriff, Terrebonne Parish, who testified that Appellant’s counsel was present at Contract’s slip when the seizure was made. Pete testified that he inquired as to custody of the barge during the seizure, and was informed by Appellant’s counsel that arrangements for custody had been made. Upon receiving such assurance, Pete made no provision for a custodian. Pete further testified that had the Sheriff’s Office been required to provide custodial service on a 24 hour basis, the cost would have been between $2.00 and $2.50 per hour.
Intervenor’s President, Darton Do-mangue, testified as to the original arrangement whereby Contract agreed to berth the vessel without charge hoping to be awarded the repair contract. He stated the seizure ended this arrangement. Following seizure, the barge was left at Contract’s slip, no agreement having been reached as to the compensation due Contract for caring for the vessel. Domangue explained that its facilities consisted of a slip shared with an adjoining concern, Rat-cliff Materials, each company using that portion of the slip next to its own premises. The center portion of the slip was used for navigational purposes, that is, bringing vessels into and out of the two places of business. Domangue also stated that prior to seizure, he had informed Appellant’s representative, Cannon, that the barge required pumping to keep it afloat and prevent its sliding into the center of the slip and interfering with traffic in and out of the facility. At this time, Cannon promised to remove the barge within a week. On the day of the seizure, Cannon promised to pump out the barge and take care of the vessel the following Monday, but never did so. Thereafter Domangue allowed the barge to remain in the slip because he had no alternative other than cutting it loose and letting it drift. Do-mangue verified actual expenses of $1,355.-25 incurred in pumping out and otherwise caring for the barge. He determined a fee of $50.00 per day for berthing and general custodial care was reasonable after conferring with other slip owners in the vicinity. He considered this amount fair in view of the time lost by his employees from regular work in keeping unauthorized persons away from and off of the barge, time lost in keeping the barge against the bank to maintain navigation into the slips, and delays in jobs resulting from the presence of the barge in Contract’s slip. On two occasions, the barge had to be pumped out, brought back against the bank and new ropes provided to replace those which had parted. Domangue also noted that because of the presence of Appellant’s barge, on two occasions, tugs had to be rented to position other vessels being worked on.
Intervenor’s employee, Amos Crabtree, was present when the seizure was made. He testified he was instructed by Pete not to let anyone aboard the barge for any reason whatsoever. He also stated that Contract did not have around the clock watchmen on duty, but that the company did provide supervision on an average of 16 to 18 hours daily.
Martin P. Cannon, Appellant’s Operations Manager, confirmed that there was *685 no agreement with Contract for keeping the vessel for $50.00 daily. He also stated that his firm was presently berthing the same barge for a monthly rental of $250.-00, but that no custodial services were provided for this figure.
The rule of law applicable in a suit for recovery on quantum meruit is aptly stated in Readco Industries, Inc. v. Myrmax Specialties, Inc., La.App., 236 So.2d 573, as follows:
“ . . . The argument of plaintiff can be disposed of by referring to the case of Bordelon Motors v. Thompson (La.App.), 176 So.2d 836, where the court said:
‘In the case of Gilmore et al. v. Gasquet, 178 La. 437, 153 (151) So. 763 (1933), the court stated the general rule that plaintiff in a suit on quantum meruit should recover “ . . . as much as he reasonably deserves for his services, and the time and labor required ...” There is no definite test to determine the reasonable value of such services. It is a matter of equity, depending on the circumstances of each case. See Haase v. Brumfield, La.App., 137 So.2d 680 (1st Cir. 1962) and authorities cited therein. Certainly a great deal of discretion should be left to the trial judge.’ ”
The trial court concluded the cost of custodial services on a 24 hour per day basis would be $48.00, provided a single custodian were assigned to the barge on a full time assignment. Since Contract had employees on duty only 18 hours a day, the lower court found the most Appellant should recover as custodian would be )4ths of $48.00, or $36.00, provided an employee had been assigned the exclusive task of caring for the barge. Since Contract did not provide an employee to care for the barge exclusively, the trial court concluded the nature of the care and supervision rendered was worth one-half the sum of $36.-00, or $18.00 daily.
In essence, Appellant maintains that since it has shown it is presently berthing the same barge for $250.00 monthly, or the sum of $8.33 daily, the award of the trial court for such services should be reduced to that amount.
It is obvious that in this instance, Contract provided services above and beyond that of merely berthing subject barge. It pumped out the barge to prevent its sinking, moored the vessel when its moorings broke, prevented vandalism and theft to the barge and its equipment, and exercised general care and supervision to protect the barge and insure its safety.
Under the circumstances, we find no abuse of the discretion vested in the trial court in fixing the award to Intervenor on a quantum meruit basis.
The judgment of the trial court is affirmed at Appellant’s cost.
Affirmed.